414 F.2d 627
 69-2 USTC P 9512
 James G. NASH and Cecelia Nash, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
BIRMINGHAM TRUST NATIONAL BANK, as Trustee of the Margaret
Nash Trust, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
BIRMINGHAM TRUST NATIONAL BANK, as Trustee under the James
G. Nash, Jr.,Trust, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 26928-26930.
 United States Court of Appeals Fifth Circuit.
 July 2, 1969.
 
 Macon L. Weaver, U.S. Atty., Birmingham, Ala., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Martin T. Goldblum, Attys., Tax Division, Dept. of Justice, Mitchell Rogovin, Asst. Atty. Gen., Washington, D.C., for appellant; E. Ray Acton, Asst. U.S. Atty., of counsel.
 E. M. Friend, Jr., Sirote, Permutt, Friend & Friedman, Harold I. Apolinsky, Joseph S. Bluestein, Birmingham, Ala., for appellees.
 Before TUTTLE and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal presents the issue as to the taxability of a reserve for bad debts, set up by individual taxpayers, upon their transfer of the accounts receivable owned by the taxpayers, to controlled corporations, under Sec. 351 of the 1954 Internal Revenue Code.[1]
 
 
 2
 These consolidated suits were brought to recover federal income taxes for the year 1961. The taxes had been paid by the taxpayers, James G. Nash and his wife by joint return and Birmingham Trust National Bank as trustee under the James G. Nash, Jr. Trust and under the Margaret Nash Trust. These persons were partners operating various finance institutions. In their operation they used the accrual method of accounting and the reserve method of accounting for bad debts.
 
 
 3
 On June 1, 1960, the partnership separately incorporated eight of its finance businesses in accordance with Sec. 351, supra. Among the partnership assets transferred to the controlled corporations were accounts receivable in the total amount of $486,853.69. This represented the face amount of the accounts receivable. However, the partnership books at that time reflected a reserve for bad debts applicable to the accounts receivable in the amount of $73,028.05. In setting up the books of account for the new corporation, the accounts receivable were shown at face value and then an item representing the proportionate part of the reserve for bad debts applicable to that particular account was deducted, purportedly then showing the net amount, which taxpayers contend represents the true or net value of the accounts.
 
 
 4
 The Commissioner determined that the partnership should have included for its final fiscal year ending January 31, 1961 the amount of the bad debt reserve, $73,028.05, which the partnership had built up during its operation and which at the time of transfer to the corporations had not been used by specific charge-offs.
 
 
 5
 This case appears to be in all respects similar to the case of Estate of Schmidt v. Commissioner of Internal Revenue (9th Cir., 1968) 355 F.2d 111, in which the Court of Appeals for the Ninth Circuit reversed a decision of the Tax Court which had accepted the Commissioner's position as here urged upon us. In reversing the Tax Court, the Court of Appeals for the Ninth Circuit distinguished prior decisions of its own. Arcadia Savings & Loan Assn. v. Commissioner of Internal Revenue (9th Cir.) 300 F.2d 247 and West Seattle Natl. Bank of Seattle v. Commissioner of Internal Revenue (9th Cir.) 288 F.2d 47.
 
 
 6
 After carefully considering the analysis made by the Tax Court in its opinion in the Schmidt case (before reversal by the Ninth Circuit) found in 42 T.C. 1130 and its subsequent opinion in Schuster v. Commissioner of Internal Revenue, 50 T.C. 98, we have concluded that with deference, the Commissioner's position as supported by the Tax Court is sound and should be adopted. We, therefore, respectfully disagree with the judgment and decision of the Court of Appeals announced in Estate of Schmidt v. Commissioner of Internal Revenue, supra.[2]
 
 
 7
 The parties agree substantially to the proposition that the setting up of a bad debt reserve by a taxpayer is an accounting practice which permits him to estimate in advance what proportion or percentage of his accounts receivable will not be collected. This system of accounting is recognized by regulations and, so long as the amounts deducted from income are deemed reasonable, they are allowed as a reduction in taxable income. The parties also agree substantially that whenever the need for maintaining such reserve is no longer present, the amount carried as reserve must be covered back into income, because the taxpayer has reduced his tax during the period of accumulation of the reserve and it is only just and proper under the taxing system that it be reported as income when it has fully served its purpose. Of course, generally, this occurs only upon final liquidation or upon sale of assets in a manner that demonstrates that they are worth face value.
 
 
 8
 The government contends that this rule should be applied with its full vigor here, since it says that when the individuals transferred the accounts receivable to the eight corporations, they, the transferors, could never need such a reserve because the accounts could never become worth less than face value in their hands. The taxpayers counter with the argument that the accounts were really transferred to the newly organized corporation at the net value which was represented by the face of the accounts less the reserve for bad debt.
 
 
 9
 Taxpayers lay great stress upon the purpose of Sec. 351, the section that permits the transfer of property to a corporation in return for a controlling stock ownership in the corporation without a recognition of either gain or loss in the hands of the transferor. It seems to us, however, that the government's position is at least technically correct. Without attempting to be too precise about expressing our views as to the main justification of such a tax free exchange or transfer, Sec. 351 is generally thought to permit a transfer in which the economic interests are still such after the transfer as that this is merely a postponement of either gain or loss to the transferors, until such gain or loss is actually realized by them. Here, where the accounts are received by the new corporations at the basis which they had in the hands of the transferors, it would really amount to a recognition of a loss in the hands of the transferors if they were permitted to 'transfer' the reserve for bad debts to the transferee corporations.
 
 
 10
 Moreover, although the actual amount of tax difference might not be large, the correctness of the government's positions seems to be strengthened by the following analysis: the deductions from income by the individual transferors as they annually set aside additions to the reserve resulted in lessening of the tax at individual rates, whereas the ultimate tax paid on any part of the reserve later determined not to be needed by the corporation or upon its decision to abandon the reserve method of accounting will be taxed at corporate rates. This would not be a mere postponement of the incidence of the tax; there would also be a change of the identity of the taxpayer.
 
 
 11
 Being unable to add to the reasoning of the opinion of the Tax Court in the Schuster case, we conclude that it correctly states the law and upon the basis of the opinion in that case we conclude that the judgment in this court must be reversed for the entry of judgment in favor of the United States.
 
 
 
 [1]
 (26 U.S.C.1964 ed., Sec. 166.)
 SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.
 (a) [as amended by Sec. 203(a), Act of Nov. 13, 1966, P.L. 89-809, 80 Stat. 1539])
 General Rule.-- No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.
 
 
 [2]
 Mertens seems to agree with this treatment. See Mertens Law of Federal Income Taxation, Vol. 3, 20. 45 at page 127. See also Mertens 30.69 at page 132 where the text states: 'The taxpayer should bear in mind that when all reason for maintaining a bad debt reserve ceases, the reserve then becomes an item of gross income, citing S. Rossin & Son., Inc. v. Commissioner of Internal Revenue, 113 F.2d 652 (2 Cir., 1940) reversing 40 B.T.A. 1274; Peabody Coal Co., 18 B.T.A. 1081 aff'd 55 F.2d 7 (7th Cir., 1931) [cert. den., 287 U.S. 605, 53 S.Ct. 9, 77 L.Ed. 526]. The subject is fully discussed on the following page in which at footnote 97(b) reference is made as to the Ninth Circuit decision in the Schmidt case